IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUBAKER KITCHENS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-6756 |
| | : | |
| STEPHEN M. BROWN, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                             **August 15, 2006**

Defendant Mark Schibanoff moves for summary judgment on all counts Plaintiff Brubaker Kitchens, Inc. ("BKI") directs against him. BKI responds there are genuine issues of material fact that should be resolved by the fact finder. I conclude there is no reason to impanel a jury to hear the claims against Schibanoff and will grant his motion.

**FACTS**

BKI manufactures custom cabinetry, and Schibanoff, along with Defendant Bob Scigliano, are principals of Kitchen Consultants, a sales and marketing company that purchased products from BKI in the past. As a result of transacting business with BKI, Schibanoff and Scigliano developed a professional relationship and personal friendship with two of its former employees, Defendants Stephen M. Brown and Dean Gochnauer. In mid-December, 2005, Brown and Gochnauer, both at-will employees, resigned from BKI to start a competing venture, Ivy Creek Custom Cabinetry, Inc.

Brown and Gochnauer kept their plan to form Ivy Creek secret from BKI's president, Rita Berkowitz. Shortly after Brown and Gochnauer resigned, Ron Loffman, one of BKI's employees, told Berkowitz that Schibanoff was "involved" with the formation of Ivy Creek. The following

1

excerpt, which bears on Schibanoff's alleged involvement, is taken from Berkowitz's deposition:

> Q. And then tell me again, what did Ron Loffman tell you about Mark Schibanoff?
> A. He told me that he was involved with it [Ivy Creek] and he overheard a conversation between Dean and Bob Scigliano.
> Q. And when Mr. Loffman told you that Mark Schibanoff was involved in it, did you ask him what his involvement was?
> A. No.
> Q. At any time have you done that?
> A. No.
> Q. To this day have you done that?
> A. No.
>
> * * *
>
> Q. And to this day do you believe that Mark Schibanoff is involved in Ivy Creek?
> A. Yes.
> Q. And how is he involved?
> A. I don't know.

(Berkowitz Dep. 253:9-255:1.) Schibanoff was asked a similar question during his deposition:

> Q. What was your involvement with respect to starting Ivy Creek?
> [Objection raised by counsel]
> A. I said good for you.
> Q. Anything else?
> A. We said that if they [Brown and Gochnauer] - - that if they did go into business for themselves we would certainly buy from them.

(Schibanoff Dep. 61:2-11.) The commitment to market Ivy Creek's products is expressed in an August 6, 2005 letter that Schibanoff authored on Kitchen Consultants' letterhead. The letter reads, in relevant part:

> To whom it may concern,
>
> * * *

> We have worked with Steve Brown and Dean Gochnauer in various capacities and respect them both for their business and manufacturing talents.
>
> We have recently been made aware that Steve and Dean are opening their own custom cabinetry manufacturing corporation to be known as "Ivy Creek" and because of our previous relationship have committed to marketing their products to our existing accounts.

* * *

(Pl.'s Mem. Opp'n Summ. J. Ex. D.) This letter flowed from a request Brown made during a dinner meeting he and Gochnauer arranged with Schinbanoff and Scigliano at a Lancaster, Pennsylvania restaurant in late July or early August, 2005. According to Brown, the purpose of the meeting was to discuss having Schibanoff and Scigliano eventually sell Ivy Creek's products.

Schibanoff's company was previously a manufacturer's representative for BKI, but Berkowitz ended the relationship several years ago because she suspected Schibanoff "was trying to steal Steve and Dean away from Brubaker Kitchens to form their own company." (Berkowitz Dep. 262:19-21.) Even after Berkowitz terminated Schibanoff's company as a BKI representative, Berkowitz acknowledged Schibanoff "continued to sell our cabinetry for many years after that." (*Id.* at 264:11-12.) Schibanoff, though, ceased placing large orders with BKI prior to 2004 and turned elsewhere for cabinetry because, as Berkowitz testified, the finish on a soft maple job BKI prepared for Schibanoff "just looked horrendous." (*Id.* at 248:16-19.) According to Berkowitz, the volume from Schibanoff went down significantly after this event (*id.* at 249:10-11), and, during 2005, BKI received less than $1,000 worth of business from Schibanoff's company (*id.* at 250:9-10). Berkowitz conceded that, since Ivy Creek has become operational in 2006, Schibanoff's decision to place orders with it does not represent the loss of a BKI customer. (*Id.* at 250:15-20).

**DISCUSSION**

BKI filed its Second Amended Complaint on June 19, 2006. In it, Schibanoff is alleged to have: (1) infringed BKI's copyrighted catalogue (Count I); (2) conspired with other Defendants to harm BKI (Count III); (3) tortiously interfered with contractual relations between BKI's customers and its employees (Count IV); (4) tortiously interfered with BKI's prospective advantage (*i.e.*, BKI's prospective customers and employees) (Count V); (5) induced at-will employees of BKI to leave their employment (Count VIII); and (6) procured information by improper means (Count X). In its response to Schibanoff's motion for summary judgment, BKI contends only four of its claims are directed against Schibanoff. Specifically, BKI's response states:

> Of the ten counts alleged by BKI, BKI asserts against Schibanoff only Counts [sic] III – Conspiracy; Count IV – Tortious Interference with Contractual Relations; Count V – Tortious Interference with Prospective Advantage; and Count VIII – Inducement of Breach of At-Will Employment. The remaining counts are intended to be directed at other defendants besides Schibanoff.

(Pl.'s Mem. Opp'n Summ. J. 3) Thus, I treat BKI's statement as a concession that, based on the evidence developed thus far in support of its claims, there is no genuine issue of fact on BKI's causes of action against Schibanoff for copyright infringement and procuring information by improper means. Even on the counts BKI directs at Schibanoff at this point, I conclude he is entitled to prevail on his motion.

Summary judgment prevents juries from speculating about the evidentiary basis for a party's claim. A trial is necessary only if genuine issues of material fact exist, and, under Federal Rule of Civil Procedure 56(c), the burden is on the moving party to demonstrate the absence of a factual dispute. "Only disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Viewing the record in the light most favorable to BKI and drawing all inferences therefrom in BKI's favor, I conclude a reasonable jury could not find in favor of BKI because its claims are factually unsupported.  In short, Schibanoff's conduct is not actionable under any of the causes of action BKI has asserted against him.

Pennsylvania law recognizes the tort of civil conspiracy, which is defined as a combination between two or more persons to do an unlawful act or to do an otherwise lawful act by unlawful means.  *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).  Proof of malice (*i.e.*, an intent to injure) on the part of the tortfeasor is an essential element of the cause of action.  *Id.* Here, Brubaker claims Schibanoff conspired with Brown and Gochnauer to have the latter two Defendants breach their fiduciary duties to BKI.  (Second Am. Compl. ¶ 41.)  Schibanoff moves for summary judgment on this count because he argues there is no evidence (direct or circumstantial) of malice.  BKI's response does not point to direct evidence of malice, but, instead, asserts BKI "is entitled to prove Schibanoff's participation in a conspiracy with Brown and Gochnauer by circumstantial evidence such as Schibanoff's prior efforts to lure Brown and Gochnauer away from BKI, and Brown's and Gochnauer's diversion of, among other things BKI's trade secrets, know-how, employees and customers."  (Pl.'s Mem. Opp'n Summ. J. 9-10.)

Circumstantial evidence of a conspiracy must be "full, clear, and satisfactory," meaning there must be an adequate factual basis from which a jury can draw reasonable inferences of an agreement to harm the claimant.  *Blank & Gottschall Co. v. First Nat'l Bank of Sunbury*, 50 A.2d 218, 220 (Pa. 1947).  Here, no such evidence exists.  First, there is no factual support for the assertion Brown and Gochnauer diverted "BKI's trade secrets, know-how, employees and customers."  Second, although

5

I credit Berkowitz's suspicion that Schibanoff tried to lure Brown and Gochnauer away from BKI several years ago and view this evidence in the light most favorable to BKI, no reasonable juror could infer malice from this event because it is too attenuated, both temporally and causally, from Schibanoff's dinner meeting with Brown and Gochnauer and his letter of reference on their behalf. Had Schibanoff ceased business relations with BKI immediately after Berkowitz terminated his company as a BKI representative, a factual issue might exist over whether Schibanoff was motivated by continued spite toward BKI.  Here, though, it is undisputed that even after Schibanoff's company lost its position as a BKI representative, Schibanoff continued to place substantial orders for cabinetry from BKI and only ceased doing so after BKI botched the finish on a major project. "Absent the essential element of malice," I will not permit BKI's conspiracy claim against Schibanoff to go to a jury. *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2004).

BKI's claims for tortious interference with current and prospective contractual relations also suffer the same fate.  Both causes of actions require:

> (1) the existence of a contractual or prospective contractual relation between the complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damages as a result of the defendant's conduct.

*Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. Ct. 2003).  The conduct at issue must be not only "intentional," but also "improper." *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978).  In making a determination about the propriety of a defendant's conduct, a court should consider the following factors:

>
> (1) the nature of the actor's conduct;
> (2) the actor's motive;
> (3) the interests of the other with which the actor's conduct interferes;
> (4) the interests sought to be advanced by the actor;
> (5) the proximity or remoteness of the actor's conduct to the interference; and
> (6) the relations between the parties.

*Id.* at 1184. Here, BKI alleges Schibanoff tortiously interfered with BKI's current and prospective customers by inducing them to become customers of Ivy Creek. Plaintiff also claims Schibanoff tortiously interfered with BKI's relationships with its (current and prospective) employees. In its response and sur reply, though, BKI has not been able to point to one customer relationship that has been disturbed by any act that could directly or inferentially be attributed to Schibanoff. Additionally, on the record before me, the only two BKI employees with whom Schibanoff could possibly have "interfered" were Brown and Gochnauer, but, as I will discuss, no reasonable juror could find Schibanoff's conduct actionable.

The most significant act on Schibanoff's part was authorship of the letter of reference wherein Schibanoff committed his company to market Ivy Creek's products. Upon my evaluation of the above-listed factors, I conclude there is no factual support to render this conduct "improper" as it pertains to Brown's and Gochnauer's former employment with BKI. First, the nature of Schibanoff's act is innocuous because it represents no more than an attempt to assist Brown and Gochnauer obtain financing for Ivy Creek. Upon consideration of the second factor, BKI has adduced no evidence of an ulterior motive on Schibanoff's part to injure BKI and none is present on the face of the letter. In addressing the third factor, BKI presumably has an interest in retaining key employees like Brown and Gochnauer and minimizing competition, but Schibanoff's support of Brown and Gochnauer was not in derogation of any restrictive covenants they had with BKI. *Cf.*

*Reading Radio, Inc.*, 833 A.2d at 211-12 (finding defendant acted improperly because he solicited employees to breach restrictive covenants with their employer). The fourth factor also favors Schibanoff because, although he presumably had an interest in the success of Ivy Creek – a direct competitor to BKI – his company's commitment to market Ivy Creek's products did not mean a loss of business to BKI. Schibanoff had already ceased placing substantial orders with BKI before 2004, so Schibanoff's interest was not at BKI's expense. Consideration of the fifth factor also points to no impropriety because at the time Schibanoff authored the letter, Brown and Gochnauer had already made their decision to form Ivy Creek. A reasonable fact finder would perceive Schibanoff's conduct as supportive; not as interference. The final factor – the relationship of the parties – also goes against BKI because it is undisputed there was no significant business transacted between them for approximately two years prior to Schibanoff authoring the reference letter. Therefore, the claims for tortious interference with current and prospective contractual relations cannot survive summary judgment.

BKI's cause of action against Schibanoff for inducing Brown and Gochnauer to leave the employ of BKI is also factually unsupported. It is undisputed both Brown and Gochnauer were at-will employees, so their departure from BKI is only actionable if they were "systematically induced" to leave BKI for the sole purpose of crippling and destroying it or to commit wrongs against it, such as disclosing its trade secrets or stealing its customers. *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 847 (Pa. 1957). I agree with Schibanoff that "Plaintiff points to no evidence that Schibanoff's intention was for Brown and Gochnauer to steal trade secrets or other customers." (Def.'s Reply Br. 4.) In fact, when Berkowitz was questioned during her deposition about what information formed the basis for this claim, she simply responded: "I don't have any." (Berkowitz

Dep. 102:16-19.)

      To summarize, Schibanoff discussed the formation of Ivy Creek over a dinner meeting with Brown and Gochnauer and subsequently issued a reference letter to assist them obtain financing. These material facts are undisputed, and they represent Schibanoff's only involvement in the events that precipitated the lawsuit against him.  There are no issues for trial on the claims against Schibanoff, and an appropriate order follows.